# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCIS PACANOWSKI,<br><br>               Plaintiff<br><br>v.<br><br>ALLTRAN FINANCIAL, LP,<br><br>               Defendant | CIVIL ACTION NO. 3:16-CV-1778<br><br>(MEHALCHICK, M.J.) |

## **MEMORANDUM OPINION**

Before the Court is the motion of Defendant, Alltran Financial LP (hereinafter "Alltran," formerly known as "United Recovery Systems"), to dismiss and to compel arbitration, or alternatively stay proceedings pending arbitration. (Doc. 21). This matter having been fully briefed, it is ripe for disposition. For the following reasons, the Court will **DENY** Defendant's motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

At some point prior to 2003, Plaintiff, Francis Pacanowski ("Pacanowski") opened a new Home Depot credit card account ("the Account") (Doc. 21-1 at 1). Citibank, (South Dakota) N.A. ("Citibank") eventually purchased the Account. (Doc. 21-2 at ¶ 4). Pacanowski submits that the identity of the original creditor, and the terms of the original subject agreement are unknown. Pacanowski currently has a delinquent balance on his account in excess of $6,600.00, which is the subject of this lawsuit. While the Account was active, Citibank mailed to Pacanowski multiple documents, each of which purported to replace the prior terms of the Account. (Doc. 21-2 at ¶¶6-13). The last of these documents was sent in May 2011. (Doc. 1 at ¶11; Doc. 21-2 at ¶11). This document contains an arbitration provision. (Doc. 23-1 at 6). The

May 2011 document advised Pacanowski that Citibank was changing the terms of the agreement, including the applicable arbitration provision, and provided Pacanowski with an opportunity to opt out of the 2011 Notice. Pacanowski did not opt out of the 2011 Notice.

This lawsuit was instituted by Pacanowski on July 20, 2016 against Alltran, in which Pacanowski alleges that Alltran, acting as a debt collector for Citibank, sent him a form letter on or around July 21, 2015, attempting to collect the outstanding account balance, and claiming that the letter violates the Fair Debt Collection Practices Act. (Doc. 1 at ¶ 12). Pacanowski alleges that the letter violates the FDCPA by failing to include a disclosure as to when the amount due was calculated or if the debt would continue to grow. (Doc. 1 at ¶¶ 12-14).

Alltran has moved the Court dismiss the case and to compel arbitration, or in the alternative, to stay this matter pending individual arbitration of Pacanowski's claims. Alltran submits that the Pacanowski's FDCPA claims against Alltran clearly relate to Pacanowski's account, and that the allegations establish that Alltran is connected with Citibank or was acting as Citibank's agent or representative when it contacted Pacanowski. Alltran further submits that Pacanowski alleges that Alltran attempted to collect a debt on behalf of Citibank, and the letter that Pacanowski allegedly received from Alltran identifies Citibank as Alltran's client. As such, Alltran submits that Pacanowski's claims fall squarely within the express terms of the arbitration provision of Pacanowski's Card Agreement, and that the arbitration agreement is valid and binding.

Pacanowski submits that he is not bound by the arbitration provision because (1) the cardmember agreement is a contract of adhesion; (2) Alltran has not presented any evidence regarding the initial terms of the contract with Citibank's predecessor; (3) Pacanowski's claim is not included within the provision's scope because it is not a "Claim" as defined in the

agreement; (4) Alltran's alternative estoppel argument fails; (5) Alltran is not a third party beneficiary because it was not named in the cardmember agreement; and (6) that this Court should decide the gateway issue of arbitrability.

The Court addresses each of these arguments below.

## II. DISCUSSION

### A. THIS COURT SHOULD DECIDE THE GATEWAY ISSUE OF ARBITRABILITY.

The initial question of arbitrability—*i.e.*, whether or not the parties validly agreed to arbitrate—is presumed to be a question for the court unless the parties clearly and unmistakably indicate otherwise. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013); *Briggs v. Macy's Inc.*, No. CV 3:16-0902, 2017 WL 590274, at *2–3 (M.D. Pa. Feb. 14, 2017). In *Guidotti*, the Third Circuit Court of Appeals clarified the appropriate standard of review to be applied to a motion to compel arbitration filed before the completion of discovery. This clarification was needed due to conflicting precedent using the standard under Federal Rule of Civil Procedure 12(b)(6) applied to motions to dismiss as compared to precedent using the standard under Federal Rule of Civil Procedure 56 applied to motions for summary judgment. *Guidotti*, 716 F.3d at 771. The Third Circuit determined that this conflict was premised on the competing purposes of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governing arbitration versus the values underlying contract interpretation more generally. *Guidotti*, 716 F.3d at 773. While the FAA "calls for a summary and speedy resolution of motions or petitions to enforce arbitration clauses," enforcement of the private agreement between the parties is also an important consideration. *Guidotti*, 716 F.3d at 773 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983)). "Accordingly, '[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there

should be express, unequivocal agreement to that effect.'" *Guidotti*, 716 F.3d at 773 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)) (alteration in original).

The Third Circuit in *Guidotti* held that where the affirmative defense of arbitrability is apparent on the face of the complaint or those documents relied upon in the complaint, the standard under Rule 12(b)(6) should be applied. *Guidotti*, 716 F.3d at 773-74. In those cases, the FAA would favor speedy resolution without the delay of discovery. *Guidotti*, 716 F.3d at 773-74. "[A] more deliberate pace is required" when either (1) the complaint and documents referenced therein do not establish with "requisite clarity" that the parties agreed to arbitrate or (2) "the opposing party has come forth with reliable evidence that is more than a 'naked assertion … that it did not intend to be bound,' even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp.2d 474, 479 (E.D. Pa. 2011) and *Par-Knit Mills*, 636 F.2d at 55).

When the issue of arbitrability is not apparent on the fact of the complaint, "the motion to compel arbitration *must* be denied pending further development of the factual record." *Guidotti*, 716 F.3d at 774 (emphasis added). When the issue of arbitrability is apparent on the face of the complaint but the non-moving party has come forward with evidence to place the question in issue, the motion should be resolved according to the standard provided in Rule 56. *Guidotti*, 716 F.3d at 774. "Under either of those scenarios, a restricted inquiry into the factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant *must* be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Guidotti*, 716 F.3d at 774 (emphasis added) (internal citations and quotations omitted).

In this case, the parties exchanged limited initial discovery in anticipation of this motion, and therefore the Court has a complete factual record before it with regard to the issue of arbitrability, and will decide this motion based on a motion for summary judgment standard.

B. THE ARBITRATION AGREEMENT IS VALID.

To compel arbitration, Courts must determine (1) the validity of the arbitration agreement and (2) whether the dispute is encompassed by the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Accordingly, a court must initially inquire into whether a valid agreement to arbitrate exists. *Bey v. Citi Health Card*, No. CV 15-6533, 2017 WL 2880581, at *4–5 (E.D. Pa. July 6, 2017); *Trippe*, 401 F.3d at 532. Courts look to ordinary state law principles of contract formation to make this determination. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003). The Card Agreement in dispute contains a choice-of-law provision, which states that "Federal law and the law of South Dakota, where we [Citibank] are located, govern the terms and enforcement of this Agreement." (Doc. 23-1 at 7). Therefore, South Dakota state law principles of contract formation apply here. Under South Dakota law, the elements necessary for contract formation are: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient consideration. *American Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1023 (8th Cir. 2010) (citing S.D. Codified Laws § 53-1-2). To form a contract, there must be an objective manifestation of mutual assent. *Jacobsen v. Gulbransen*, 623 N.W.2d 80, 90 (S.D. 2001). Regarding consumer credit cards, South Dakota defines the use of a credit card as acceptance of a credit card agreement. *See* S.D. Codified Laws § 54-11-9 (establishing that "[t]he use of an accepted credit card ... creates a binding contract between the card holder and the card issuer.").

Here, all of the requisite elements for contract formation exist. First, Pacanowski and Citibank are both parties capable of contracting. Second, both provided their consent in contracting. In the May 2011 document, Citibank included a "Notice of Change in Terms [to the Account], Right to Opt Out and Information Update" in its periodic billing statement to Pacanowski. (Doc. 23-1 at 4-7). The updated Card Agreement contained an arbitration provision, and indicated that to opt out of the changes the consumer "must call or write [Citibank] within 25 [twenty-five] days of 07/23/2011." (Doc. 23-1 at 4). Further, the Card Agreement explicitly stated that it was the contract that governed the Account and would apply to the consumer's use of the Account. (Doc. 23-1 at 4). Moreover, shortly after the May 2011 document was issued, Pacanowski used the credit card to make a purchase in the amount of $741.24 on May 25, 2011. (Doc. 22-1 at 46). Third, there was a lawful object to the contract, that is, the creation of a credit card account. Finally, there was consideration – Citibank exchanged a credit line for Pacanowski's promise to pay off charges made to the credit account with interest. Most notably, Pacanowski does not challenge the existence of the May 2011 Card Agreement that was mailed while the Account was active. (Doc. 23 at 5). Because all elements of a valid contract are present, a valid agreement to arbitrate existed between Pacanowski and Citibank.[1]

---

[1] Pacanowski additionally argues that because the Account's original contract terms have not been produced, any modifications made by Citibank are unfounded because there is no evidence that Citibank's predecessor reserved the right to amend the contract. In reliance, Pacanowski cites to S.D. Codified Laws §54-11-9 regarding modifications of credit card agreements, which has since been repealed. Neither Alltran nor Pacanowski has provided the original contract with Citibank's predecessor, and the Court will not speculate as to its terms. However, the Court declines to address this issue further as the subsequent arguments are dispositive.

Pacanowski submits that the Card Agreement in the May 2011 document is a contract of adhesion, and therefore the doctrine of *contra proferentem* should apply. Under South Dakota Law, contracts of adhesion are "imposed and drafted by [a] party of superior bargaining strength, relegat[ing] to the subscribing party only the opportunity to adhere to the contract or reject it." *Johnson v. Rapid City Softball Ass'n*, 514 N.W.2d 693, 704 (S.D. 1994); (citing 17 C.J.S. Contracts §10 (1963); *see Rozeboom v. Northwestern Bell Telephone Co.*, 358 N.W.2d 241, 243-44 (S.D.1984) (establishing a disparity of bargaining power tends to lead to a contract of adhesion). Not all contracts offered on a "take it or leave it basis" are contracts of adhesion. *Schwalm v. TCF Nat'l Bank*, 226 F. Supp. 3d 937, 943 (D.S.D. 2016). In *Baker v. Sci. Applications Int'l. Corp.*, the District Court of South Dakota considered whether an arbitration agreement was a contract of adhesion when it was a condition of Plaintiff's employment with the Defendant. *Baker v. Sci. Applications Int'l Corp.*, No. CIV. 06-4096, 2006 WL 2708546, at *1 (D.S.D. Sept. 21, 2006), *aff'd*, 273 F. App'x 577 (8th Cir. 2008). There, the court reasoned that even though the Plaintiff was required to agree to the arbitration agreement if he desired employment, it was not an invalid contract of adhesion because the Plaintiff did not lack bargaining power, could have obtained employment elsewhere, and was not compelled to only work for the Defendant's company. *Baker*, 273 F. App'x at 579. Here, Pacanowski avers that the contract is one of adhesion because there was "little choice about the terms of the contract," and that he "would lose access to the account" by rejecting its provisions. (Doc. 23 at 7). However, Pacanowski was under no obligation to open a credit card with Citibank, and he had a meaningful choice in his acceptance or rejection of its provisions. Further, Pacanowski was not required to agree to the updated terms of the Card Agreement, and could have opted out of the provisions as provided

under the contract or stopped utilizing the Account. Accordingly, this Court finds that the Card Agreement containing the Arbitration Provision was not an invalid contract of adhesion.[2]

Based on the foregoing, the Court finds that the arbitration agreement within the Credit Card Agreement is valid.

### C. ALLTRAN MAY NOT COMPEL ARBITRATION BECAUSE IT IS NOT A SIGNATORY TO THE ORIGINAL AGREEMENT.

Alltran argues that it is entitled to compel arbitration of Pacanowski's FDCPA claim under the contract as Citibank's agent or representative. (Doc. 21-1 at 9). Pacanowski avers in the Complaint that Alltran is "engaged in the business of collecting debts" that are "asserted to be due another." (Doc. 1 at ¶¶5-8). In its letter to Pacanowski dated July 21, 2015 ("the Collection Letter"), Alltran attempted to recover the amount due on the Account. (Doc. 1 at ¶11). The Collection Letter states that Alltran's "client" requested they "negotiate with [Pacanowski] to resolve this debt" and identified the account's creditor as "Citibank, N.A., THE HOME DEPOT." (Doc. 1 at 17). Alltran filed a Motion to Compel Arbitration based on the terms of the written Arbitration Agreement, which states the Card Agreement is enforceable not only as to claims between Pacanowski and Citibank, but also as to claims involving anyone "connected with" them, including "an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy." (Doc. 23-1 at 6). In support of its Motion, Alltran argues that it acted as Citibank's agent or representative when it

---

[2] Absent a finding of a contract of adhesion, the Court finds it unnecessary to address Pacanowski's argument regarding *contra proferentem*. However, even if a contract of adhesion was found to exist, Pacanowski has notably not advanced any arguments detailing ambiguity in the Card Agreement that would move the Court to consider the application of *contra proferentem*.

attempted to recover the balance due on the Account, and is thus entitled to enforce the Arbitration Provision. (Doc. 21-1 at 10).

Recently, the Third Circuit Court of Appeals addressed the same arbitration provision as in the present case. *See White v. Sunoco Inc.*, No. 16-2808, 2017 WL 3864616, at *7 (3d Cir. Sept. 5, 2017). In *White*, the Plaintiff sued the Defendant for fraud and misrepresentation when it failed to apply promotional discounts through the use of Plaintiff's credit card at Defendant's gasoline stations. *White*, 2017 WL 3864616, at *1. The Defendant moved to compel arbitration under the terms of the Plaintiff's credit card agreement with Citibank, to which the Defendant was not a party. *White*, 2017 WL 3864616, at *3. The Court, applying South Dakota law in its interpretation of the contract, reasoned that even if the Defendant was "connected with Citibank" it did not give a non-signatory the right to compel arbitration under the unequivocal terms of the agreement. *White*, 2017 WL 3864616, at *7. Looking to the express language of the agreement to arbitrate, the court in *White* found the contract explicitly stated that "either *you* or *we* may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy *between you and us* (called 'Claims')." *White*, 2017 WL 3864616, at *7 (emphasis added). Further, the arbitration clause provided "at any time *you* or *we* may ask an appropriate court to *compel arbitration of Claims*..." *White*, 2017 WL 3864616, at *7 (emphasis added). Under the contract's definitions, "we" and "us" referred to Citibank (South Dakota), N.A. and "you" referred to the account holder. *White*, 2017 WL 3864616, at *7. Thus, the Court held that this language, which is identical to the Arbitration Provision in the case at bar, did not allow a third party to compel arbitration and consequently denied the Defendant's motion. *White*, 2017 WL 3864616, at *7. Accordingly, because the plain language of the Card

Agreement does not provide for non-signatories to initiate arbitration proceedings, Alltran cannot compel arbitration against Pacanowski in the instant case.

Further, based on the language of the Collection Letter, there is no evidence that Citibank formally assigned Pacanowski's debt to Alltran when retained for collection purposes. Under the arbitration clause of the Card Agreement, a sub-heading titled "what about debt collections" provides "we and *anyone to whom we assign your debt* will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee. *We* and *any assignee may seek arbitration* on an individual basis *of any Claim asserted by you*, whether in arbitration or any proceeding, including in a proceeding to collect a debt." (Doc. 23-1 at 6) (emphasis added). The express terms of the agreement thus contemplate claims by or against a non-party when it has specifically been assigned the debt to collect. It is undisputed that Citibank did not assign the Card Agreement to Alltran. (Doc. 28 at 3). Further, Alltran has not posited that Citibank specifically assigned Pacanowski's *debt* to Alltran, nor does the language of the Collection Letter indicate as much. (Doc. 1 at 17). Thus, Alltran is not contemplated under the express terms of the contract as a non-signatory to the arbitration agreement.

Even if the Arbitration Provision at issue can be invoked by non-signatories, Alltran's relationship with Citibank is insufficient to warrant coverage under the contract. As previously indicated, Alltran submits that they acted as Citibank's "agent" in the collection of Pacanowski's debt. (Doc. 21-1 at 10). In support of its position, Alltran relies on a case from the Supreme Court of South Dakota, *Nattymac Capital LLC v. Pesek*, 784 N.W.2d 156, 160 & 161 n.5 (S.D. 2010). Alltran avers that *NattyMac* is guiding because it "observed that debt collectors are agents of the debt owner." (Doc. 22 at 10). However, *NattyMac* is readily distinguishable from the dispute presently before this Court. In *NattyMac*, the court found that an agency relationship

existed between a loan servicer and mortgage loan purchaser based upon the express terms of their service contract. *NattyMac*, 784 N.W.2d at 161. The agreement defining the scope of the contractual relationship was undisputed, and while the loan servicer may have been an independent contractor in some regards, the contract expressly authorized the servicer to act as an "agent for the purposes of collecting loan payments." *NattyMac*, 784 N.W.2d at 161. Unlike in *NattyMac*, here there is no express contract that defines the scope of Alltran's relationship with Citibank. Indeed, the Collection Letter is the only evidence of Alltran's connection to Citibank, and merely indicates that Cititbank is its "client" and the Account's creditor. (Doc. 1 at 17). Alltran has not provided evidence of such a collection agreement with Citibank that would indicate it was engaged to act as Citibank's designated agent. Alleging that it was acting as Citibank's designated agent, the language in the Collection Letter is insufficient to establish the existence of such an agency relationship. *See, e.g., Simms v. Navient Sols., Inc.*, 157 F. Supp. 3d 870, 878 (D. Nev. 2016) (debt collector did not prove an agency relationship when there was no evidence of a contract or agreement establishing the existence or scope of its authority). Moreover, Alltran has not alleged that is bears any "significant relationship" to Citibank. *See Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir.2015) ("In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement"). For the foregoing reasons, Alltran cannot be bound to the contract as a non-signatory, and is not sufficiently connected with Citibank to be encompassed under the arbitration Agreement.

D. ALLTRAN IS NOT ENTITLED TO COMPEL ARBITRATION AS A NON-SIGNATORY UNDER ALTERNATIVE ESTOPPEL OR THIRD PARTY BENEFICIARY THEORIES.

Alternatively, Alltran argues that it can compel arbitration as a non-signatory based upon federal arbitration law and state contract law. (Doc. 22 at 12). There are several theories of state law upon which non-signatories can be bound to a contract: (1) assumption; (2) veil-piercing/alter ego; (3) incorporation by reference; (4) third-party beneficiary theories; (5) waiver; and (6) estoppel. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quoting 21 R. Lord, Williston on Contracts §57:19 (4th ed. 2001)). Alltran submits that it is entitled to invoke the arbitration provision under either alternative estoppel or third-party beneficiary theories.[3]

Under the theory of equitable estoppel, South Dakota Law[4] allows a non-signatory to compel arbitration against a signatory when either of two circumstances are met: (1) "all the claims against the non-signatory defendant[] are based on alleged substantially interdependent and concerted misconduct by both the non-signatories and one or more of the signatories to the contract;" and (2) the signatory asserts "claims arising out of agreements against non-signatories to those agreements without allowing those [defendants] [also to] invoke the arbitration clause contained in the agreements." *White*, 2016 WL 2988976, at *4 (*citing Rossi*

---

[3] Pacanowski submits that the Court need not apply a choice of law analysis to Alltran's third-party beneficiary argument, as whether a non-signatory may be bound to an arbitration agreement against a signatory is subject to the same analysis under Pennsylvania and South Dakota law. (Doc. 23 at 21)(*See White*, 2016 WL 2988976, at *5).

[4] Alltran cites to the alternative estoppel "test" set forth in *E.I. Dupont De Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S*, 269 F.3d 187 (3d Cir. 2001), as relied upon by the trial court in *White v. Sunoco*, 189 F.Supp.3d 486, 491 (E.D. Pa. 2016). (Doc. 21-1 at 12). However, on appeal the Third Circuit clarified that *Dupont* did not adopt or reject a federal standard regarding alternative estoppel. *White,* 2016 WL 2988976, at *3. Therefore, the relevant state law of South Dakota, which adopts the principle of equitable estoppel, will apply to the Court's analysis of Alltran's argument.

*Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 816 (S.D. 2002); *MS Dealer Serv. v. Franklin,* 177 F.3d 942, 947 (11thCir.1999); *A.L. Williams & Assoc., Inc. v. McMahon,* 697 F.Supp. 488, 494 (N.D.Ga.1988)). Here, the Court finds that Alltran does not meet either of these two circumstances.

First, Pacanowski did not base his statutory claim on allegations of concerted misconduct between Alltran and Citibank. In his Complaint, Pacanowski avers that [Alltran's] communications did not comport with the requirements of the FDCPA. (Doc. 1 at 11). Further, Pacanowski does not reference Citibank, the Card Agreement, or any wrongdoing other than Alltran's alleged violation of the FDCPA. (Doc. 1). *See, e.g., Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 734 (8th Cir. 2009) ("…Cases applying the concerted-misconduct test establish that the plaintiff must *specifically allege coordinated behavior* between a signatory and a non-signatory")(emphasis added). While Citibank may have retained Alltran as a debt collector, there is no evidence that Citibank participated in preparing the Collection Letter that lent itself to Pacanowski's claim. (Doc.1 at 17). Accordingly, the Court finds that there is no alleged interdependent misconduct with Citibank that would bind Alltran to the contract as a non-signatory.

Second, Pacanowski does not rely on the terms of the Card Agreement to bring his claim against Alltran. Alltran argues that Pacanowski's claims are related to the Card Agreement because it "created the debt Alltran was seeking to collect in the first instance and which governs the addition of any interest or fees to the Debt…" (Doc. 22 at 13). Pacanowski does not contest the debt that arose under the contract, but rather Alltran's representations in attempting to collect the debt under the FDCPA. (Doc. 1 at 9-11). While Pacanowski's debt may have been created by his use of the Account, Pacanowski's claim against Alltran is not based upon any

underlying obligation in the contract with Citibank. *See Mims v. Glob. Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1358 (S.D. Fla. 2011) (holding plaintiff's FDCPA claims were not sufficiently intertwined with a credit card agreement because "although [they] presume[d] the existence of the Agreement, they d[id] so purely for the purpose of noting there [was] an underlying debt"); *see also Pagan v. Integrity Sol. Servs., Inc.*, 42 F. Supp. 3d 932, 935 (E.D. Wis. 2014) (determining it was not inequitable to avoid arbitration invoked by debt collector when Plaintiff's FDCPA claim arose from debt accrued under contract with the signatory). For these reasons, Pacanowski cannot be compelled to arbitrate under the principle of equitable estoppel.

Non-signatories may also compel arbitration when they are third party beneficiaries of the underlying contract. *White v. Sunoco Inc.*, 189 F. Supp. 3d 486, 493 (E.D. Pa. 2016). A party asserting the third-party beneficiary theory must show "that the contract was entered into by the parties directly and primarily for his benefit." *See, e.g., Masad v. Weber*, 772 N.W.2d 144, 154 (S.D.2009). A mere showing of an incidental benefit is insufficient. *Masad*, 772 N.W.2d at 154.

Here, the Court cannot agree that Citibank clearly intended to benefit Alltran under the Card Agreement, as there is no evidence that Alltran received any benefit from the underlying contract that contained the arbitration provision. Further, Alltran bases its argument on the proposition that it was acting as an agent of Citibank, which, as discussed *supra*, is an argument with which the Court does not agree. (Doc. 22 at 13). Thus, Alltran cannot be bound to the Card Agreement as a non-signatory under equitable estoppel or third-party beneficiary theories of state contract law.

### E. THE DISPUTE DOES NOT FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT.

If a valid arbitration agreement is deemed to exist, courts must then determine whether the dispute at issue is within the scope of the arbitration agreement. *Trippe*, 401 F.3d at 532. As

noted in the preceding section, the terms of the contract cover "*all* Claims *relating to your account, a prior related account, or our relationship…no matter what legal theory they are based on…includ[ing] Claims based on contract, tort (including intentional tort), fraud, agency, you or our negligence, statutory or regulatory provisions*, or any other sources of law." (Doc. 23-1 at 6). The arbitration agreement further references debt collection under "claims covered," and provides "we and any assignee may seek arbitration on an individual basis of any Claim asserted by you, including in a proceeding to collect a debt." (Doc. 23-1 at 6). This provision, however, does not expressly provide for claims that arise from a non-assignee debt collector's conduct. Here, Pacanowski's claims are based on alleged violations of the FDCPA that occurred while Alltran attempted to collect on the Account. (Doc. 1 at 9). While the FDCPA does not explicitly address the arbitrability of claims that fall under its purview, many Courts have held that such claims are "not categorically exempt from the FAA's reach." *Brown*, 2014 WL 5803135, at *12; *See, e.g., Hodson v. Javitch, Block & Rathbone, LLP*, 531 F.Supp.2d 827, 831 (N.D.Ohio 2008) ("Congress did not intend FDCPA claims to be non-arbitrable. Courts routinely permit arbitration of such claims."). Nevertheless, the Court is of the opinion that while FDCPA claims may be subject to arbitration generally, for the aforementioned reasons the Card Agreement as it stands does not cover Pacanowski's claim against Alltran under the contract. Thus, the arbitration provision is inapplicable to Pacanowski's FDCPA claim.[5] Further, because Alltran is incapable of implementing arbitration as a non-signatory, it cannot

---

[5] Notably, Pacanowski objects to the scope of the contract with respect to which parties can compel a "Claim" to arbitration, and not whether his FDCPA claim is within the scope of the arbitration agreement. (Doc. 23 at 11). While the Court ultimately accepts Pacanowski's stance, a determination of whether the FDCPA claim is encompassed under the arbitration provision remains necessary to its analysis.

compel these claims to arbitration. *See McGinnis*, 2012 WL 604430, at *4 ("the FDCPA claim is only subject to arbitration at the election of a party who holds the right to compel arbitration under the card agreement"). Moreover, as there is no evidence that Alltran has been assigned the debt under the express language of the contract, Alltran is not entitled to invoke the arbitration provision. Thus, Alltran's Motion to Compel Arbitration will be denied.

### III. CONCLUSION

For the foregoing reasons, the motion (Doc. 21) of Defendant, Alltran Financial, L.P., is **DENIED**.

An appropriate Order will follow.

Dated: September 19, 2017                     *s/ Karoline Mehalchick*
                                              **KAROLINE MEHALCHICK**
                                              **United States Magistrate Judge**